Evan J. Smith (SBN 242352)
Ryan P. Cardona (SBN 302113)
BRODSKY & SMITH, LLC
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel:    877.534.2590
Fax:    310.247.0160
Email: esmith@brodskysmith.com
        rcardona@brodskysmith.com

*Attorneys for Plaintiff*

Ruben A. Castellón (SBN 154610)
CASTELLON & FUNDERBURK LLP
811 Wilshire Blvd., Suite 1025
Los Angeles, CA  90017
Tel: 213.623.7515
Fax: 213.532.3984
Email: rcastellon@candffirm.com

*Attorneys for Defendant*

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALESHA DAVIS,<br><br>        Plaintiff,<br>    vs.<br><br>CALIFORNIA METAL-X (CMX),<br><br>        Defendant, | Case No.: CV 20-7066-DMG (AFMx)<br><br>**CONSENT DECREE** [21]<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Alesha Davis ("Plaintiff") and California Metal-X (CMX) ("CMX").  The entities entering into this Consent Decree are each an individual "Settling Party" or "Party" and collectively the "Settling Parties" or "Parties".

**WHEREAS,** Plaintiff is a citizen of the State of California.

**WHEREAS,** Plaintiff is concerned with the environmental health of the Los Angeles River and overall Los Angeles River Watershed, of which the Los Angeles River is a part, and uses and enjoys the waters of the Los Angeles River, its inflows, outflows and other waters of the Los Angeles River Watershed;

**WHEREAS,** CMX is the owner and operator of a facility that is engaged in the manufacture of brass and bronze engineered alloys and ingots for foundry and mill customers, located at 366 East 58th St., Los Angeles, CA 90011, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS,** Plaintiff contends that her use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

**WHEREAS,** Plaintiff acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit"), and as amended by Order No. 2014-0057-DWQ ("IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, the Facility is listed as operating under SIC Code 3341, relating to Secondary Smelting and Refining of Nonferrous Metals, and SIC Code 5093, relating to Scrap and Waste Recycling. Defendant has  coverage for the Facility under the California Industrial General Permit, under the issued WDID No. 4 19I000881.  The July 1, 2015 "Notice of Intent" for the Facility to comply with the terms of the Industrial Stormwater Permit lists "California Metal X" and "CA Metal X" as the Operator and Facility names, respectively;

1        **WHEREAS**, on December 6, 2019, Plaintiff sent CMX, the United States Environmental

2    Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"),

3    and the Regional Water Quality Control Board – Los Angeles Region ("Regional Board") a notice of

4    intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§

5    1365(a) and (b).  The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C.

6    § 1311(a) and violations of the 1997 Storm Water Permit and the IGP at the CMX Facility[1];

7        **WHEREAS**, on August 6, 2020, Plaintiff filed a complaint against CMX in the United States

8    District Court, Central District of California (Case No. 2:20-cv-07066-DMG-AFM), alleging violations

9    of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit

10   at the CMX Facility ("Complaint");

11       **WHEREAS**, Plaintiff alleges CMX to be in violation of the substantive and procedural

12   requirements of the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the CMX

13   Facility;

14       **WHEREAS**, on or about December 10, 2020, Plaintiff's expert environmental consultant

15   conducted an inspection of the Facility;

16       **WHEREAS**, on March 24, 2020 CMX uploaded a revised SWPPP to the State Water Board's

17   Storm Water Multiple Application & Report Tracking System ("SMARTS"), containing additional BMPs,

18   in response to the allegations contained in Plaintiff's Notice Letter.

19       **WHEREAS**, CMX continues to deny all allegations in the Notice Letter and Complaint relating

20   to the CMX Facility;

21       **WHEREAS**, Plaintiff and CMX have agreed that it is in the Settling Parties' mutual interest to

22   enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set

23   forth in the Notice Letter and Complaint without further proceedings; and

24       **WHEREAS**, all actions taken by CMX pursuant to this Consent Decree shall be made in

25   compliance with all applicable federal and state laws and local rules and regulations.

26

27

28

---

[1] For purposes of this Consent Decree, the Industrial General Permit and any amendments thereto in effect at the time of CMX's required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP."

1    **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING**

2    **PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

3          **1.**     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)

4    of the Clean Water Act, 33 U.S.C. § 1365(a);

5          **2.**     Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of

6    the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the CMX Facility is located within this District;

7          **3.**     The Complaint alleges claims upon which relief may be granted pursuant to Section

8    505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

9          **4.**     Plaintiff has standing to bring this action;

10         **5.**     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of

11   this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court

12   to resolve any motion to enforce this Consent Decree.

13   **I.**     **<u>OBJECTIVES</u>**

14        It is the express purpose of the Settling Parties entering into this Consent Decree to further the

15   objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged

16   by Plaintiff in her Notice Letter and Complaint.  Specifically, CMX agrees to comply with Receiving

17   Water Limitation VI.A. in the IGP which requires that CMX "shall ensure that industrial storm water

18   discharges … do not cause or contribute to an exceedance of any applicable water quality standards in any

19   affected receiving water,"; Effluent Limitation V.A. of the IGP which requires that CMX "shall implement

20   BMPs [Best Management Practices] that comply with the BAT/BCT requirements of . . .[the IGP] to

21   reduce or prevent discharges of pollutants in . . . [CMX's] storm water discharge in a manner that reflects

22   best  industry  practice  considering  technological  availability  and  economic  practicability  and

23   achievability"; and the Monitoring, Sampling, and Analysis Requirements found in § XI of the IGP. CMX

24   shall maintain BMP compliance with BAT/BCT standards and with the applicable water quality standards

25   as those terms are defined by the IGP.  Nothing herein shall be interpreted as an admission by CMX that

26   it has previously failed to comply with these or any other requirements of the CWA or the IGP.

27   **II.**     **<u>AGENCY REVIEW AND TERM OF CONSENT DECREE</u>**

28   **A.**     **Agency Review and Comment.**  Plaintiff shall submit this Consent Decree to the United States

Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to CMX. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

**B.**     **Effective Date.** The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

**C.**     **Termination Date.** This Consent Decree shall terminate two (2) years after the Effective Date ("Termination Date"), or at such time as CMX ceases to have stormwater discharges subject to the IGP and CMX: 1) files all necessary and appropriate submissions regarding the same to the State Board and/or the Regional Board; and 2) provides notice of such filing to Plaintiff, unless there is a prior ongoing, unresolved dispute regarding CMX's compliance with this Consent Decree.

## III.     POLLUTION CONTROL REQUIREMENTS

**A.     Storm Water Pollution Reduction Measures**

**1.**     The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage storm water discharges, through full compliance with the IGP.

**2.**     Commencing from the Effective Date through the Termination Date, CMX shall engage in the following activities to maintain compliance with the IGP and this Consent Decree:

(a)     CMX will appoint a Qualified Industrial Storm Water Practitioner ("QISP") within sixty (60) days after the Effective Date;

(b)     Update the Storm Water Pollution Prevention Plan to include the QISP's identification number, name, and contact information (telephone number, e-mail address).

**3.**     In addition to the activities described in Sections III.A.2(a) above, CMX will assure the incorporation of the following BMPs, as more fully described in CMX's SWPPP, which shall be implemented at the Facility, the boundaries of which are outlined on the CMX's Facility Site Map ("Site Map"), (the Site Map is attached as Exhibit "A" hereto). The Parties agree that the SWPPP may be

1    modified from time to time as more fully described in this Consent Decree.  In the event of a modification

2    to the SWPPP or Facility Site Map during the term of this Consent Decree, CMX will provide a copy of

3    the revised SWPPP or Facility Site Map  to Plaintiff and will upload to SMARTs as required by the

4    General Permit.

5         (a)    **BMPs**

6              (i)    CMX will implement and maintain two individual infiltration pits, with the capacity

7                     to prevent discharge from an 85th percentile, 24-hour storm event, with a 24-hour

8                     drawdown time;

9              (ii)   CMX will implement and maintain a treatment and infiltration system which will

10                    eliminate all discharge of stormwater from any storm event up to and including the

11                    85th percentile, design storm with a 24-hour drawdown time.

12        **4.**    Within forty-five (45) days after the Effective Date, CMX shall revise the SWPPP for the

13   CMX Facility to include any BMPs required by the Consent Decree and comply with all provisions of the

14   Permit.

15        **5.**    Throughout the term of this Consent Decree, CMX shall submit any SWPPP revisions

16   made pursuant to the requirements of this Section III.A to Plaintiff for review and comment within ten

17   (10) days of the SWPPP revision.  Plaintiff will provide comments, if any, to CMX within thirty (30) days

18   of receipt of such revised SWPPP.  CMX shall incorporate Plaintiff's comments into the SWPPP or shall

19   justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments.

20   **B.    Numeric Action Level ("NAL") for Discharges from the CMX Facility.**  CMX acknowledges

21   that the following Numeric Action Levels ("NALs") in the IGP are applicable to the Facility based on the

22   general parameters required to be sampled pursuant to the IGP, its SIC code(s) and/or pollutant source

23   assessment: (i) pH; (ii) Oil and Grease; (iii) Total Suspended Solids; (iv) Aluminum; (v) Iron; (vi) Lead;

24   (vii) Zinc; (viii) Copper; and (ix) Chemical Oxygen Demand, and that CMX will continue to act in

25   conformity with the IGP and the SWPPP for the Facility, as may be amended from time to time.

26        **1.    Exceedance Response Actions (ERAs)**

27              **a.**    CMX acknowledges that it is required to comply with the Exceedance Response

28                    Action requirements of the IGP as stated in IGP § XII.

**C.     Sampling and Analysis**

  **1.**  CMX has installed a recording rain gauge capable of recording rainfall to 0.1 inches at the CMX Facility.  CMX shall maintain the recording rain gauge and maintain records of rain data.  CMX shall provide its rain gauge data within fourteen (14) days of a request made by Plaintiff.  In the event there is a dispute about the quantity of rainfall at the Facility, the rain gauge installed pursuant to this section shall be deemed to be the actual rainfall at the site.

  **2.**  During the term of this Consent Decree, and as set forth in the IGP, CMX shall collect samples of Qualifying Storm Events ("QSE"), as defined in the IGP, from at least one QSE during the first half of the reporting year (July 1 – December 31) and from one QSE during the second half of the reporting year (January 1 – June 30) as set forth by compliance group requirements.  However, nothing herein shall require CMX to conduct sampling when a QSE, as defined by the IGP, does not occur. Furthermore, nothing herein shall require CMX to conduct sampling when no discharge resulting from a QSE occurs, for example, as a result of a properly implemented stormwater treatment and infiltration system as described above in § III(A)(3)(a)(i).

  **3.**  CMX shall comply with the analytical test methods as required by Section XI.B of the IGP as more fully described in the Monitoring Implementation Plan that is included in its SWPPP.  All reported analyses required  by the Consent Decree shall be reported within thirty days of the laboratory receipt of the sample or as promptly as possible upon receipt if the laboratory takes more than 30 days to report the analyses.

  **4.**  During the term of the Consent Decree, CMX will give notice to Plaintiff of the filing of any reports or other documents containing the complete laboratory results of samples collected as required by this Consent Decree concurrently with the posting of the same on SMARTS.

**D.     Visual Observations**.  During the term of this Consent Decree, CMX shall conduct and document visual observations pursuant to Section XI.A of the IGP and as more fully described in the CMX SWPPP.

**E.     Annual Report.**  CMX shall give notice, pursuant to Paragraph VII.E. hereof, to Plaintiff when CMX submits an Annual Report to the State Board no later than July 15 of each year during the term of this Consent Decree.  The Annual Report shall contain all information required by the IGP.

1  **IV. <u>MONITORING AND REPORTING</u>**

2  **A.     Site Inspections.**

3           **1.**      Once during the term of this Consent Decree, Plaintiff may conduct an inspection of the

4  Facility up to forty-five (45) days prior to the Termination Date.   Up to three (3) of Plaintiff's

5  representatives may attend the site inspection, all of whom agree to execute the attached Release and

6  Waiver (Exhibit B) prior to entering the Facility.  The site inspection shall occur during normal business

7  hours (7:00 am – 3:30 pm).  Plaintiff and CMX shall work in good faith to select a mutually acceptable

8  date for the inspection, which will be scheduled at least ten (10) business days in advance.  CMX's

9  personnel, consultants, contractors, or attorneys may accompany Plaintiff's representative(s) throughout

10 the inspection.    If Plaintiff takes photos or videos during the site inspection, it must provide copies of

11 photographs or video to CMX within seven (7) calendar days.  CMX may then review and designate

12 photos as confidential and label any proprietary. CMX shall notify Plaintiff and Plaintiff shall then destroy

13 the proprietary  photos, and maintain all confidential photos as confidential.  The only photographs that

14 will be taken will relate to the infiltration system and previously identified discharge points.

15         **2.**      Plaintiff shall provide CMX with any comments regarding the Site Inspection within

16 seventy-two (72) hours of the completion thereof.  CMX shall respond to Plaintiff's comments within

17 thirty (30) days of the date on which they are received; however, CMX is not obligated to respond to any

18 comments regarding the Site Inspection received after seventy-two (72) hours has passed.

19 **B.     Compliance Monitoring and Oversight**.  CMX shall make a one-time payment of two thousand

20 dollars ($2,000) to compensate Plaintiff's Counsel for costs and fees to be incurred for monitoring CMX's

21 compliance with this Consent Decree.  Payment shall be made on or before March 1, 2021 or seven days

22 after the Consent Decree is approved by the Federal Agencies and entered by the Court, whichever is later.

23 Payment shall be made  payable to "Brodsky & Smith, LLC" via U.S. Mail.

24 **C.     CMX Document Provision.** During the term of this Consent Decree, within ten (10) days, CMX

25 shall give notice to Plaintiff of all documents related to storm water quality at the CMX Facility that are

26 submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality.

27 Any correspondence related to CMX's compliance with the IGP or storm water quality received by CMX

28 from any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff

1  within ten (10) days of receipt by CMX.  Provided, however, that this Consent Decree shall not require

2  CMX to disclose any information or documents subject to the Attorney Client Privilege or the Attorney

3  Work Product doctrine.

4  **V.  ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES & COSTS**

5  **A.        Environmental Project.**  To remediate the alleged environmental harms resulting from alleged

6  non-compliance with the 1997 Storm Water Permit and IGP alleged in the Complaint, CMX agrees to

7  make a payment of Three Thousand Dollars ($3,000) ) to the "Council for Watershed Health" and mailed

8  to The Council for Watershed Health attention Eileen Alduenda, Executive Director, 177 E. Colorado

9  Blvd., Ste. 200, Pasadena, CA 91105 to fund the Monitoring the Impacts of Stormwater Infiltration on

10  Groundwater Quality program, dedicated to the study and evaluation of the impacts to groundwater quality

11  from infiltrating stormwater throughout Los Angeles County. The payment shall be made on or before

12  March 1, 2021 or seven days after the Consent Decree is approved by the Federal Agencies and entered

13  by the Court, whichever is later.

14  **B.        Reimbursement of Attorneys' Fees and Costs.**  CMX shall pay a total of Forty Two Thousand

15  Five Hundred Dollars ($42,500.00) to "Brodsky & Smith, LLC" for their investigation fees and costs,

16  expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and

17  preparing the lawsuit and negotiating this Consent Decree.  Payment shall be made payable to "Brodsky

18  & Smith, LLC".   The $42,500 shall be paid as follows: seven thousand five hundred  dollars ($7,500)

19  shall be paid on or before March 1, 2021 or seven days after the Consent Decree is approved by the Federal

20  Agencies and entered by the Court, whichever is later   and  five thousand dollars ($5,000) shall be paid

21  on or before the first day of each month beginning in April 2021 through October 2021.

22  **VI.     DISPUTE RESOLUTION AND RETENTION OF JURISDICTION**

23  **A.        Continuing Jurisdiction.**   This Court shall retain jurisdiction over this matter until the

24  Termination Date defined above for the purposes of implementing and enforcing the terms and conditions

25  of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions

26  of this Consent Decree, unless a Party files a timely motion and is granted an extension of time from the

27  Court to retain jurisdiction.  The Court shall have the power to enforce this Consent Decree with all

28  available legal and equitable remedies, including contempt.

**B.      Meet and Confer.**  A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute.  The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) business days from the date of the notice.  The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.      Dispute Resolution.**  If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations, then the Parties shall request a settlement meeting before the Magistrate Judge assigned to this action.  In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court.

**D.      Burden of Proof.**  In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

**E.      Enforcement Fees and Costs.**  The litigation costs and fees incurred in prosecuting a motion to enforce shall be awarded to the prevailing party pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Federal Rule of Civil Procedure Rule 11, applicable case law interpreting such provisions, and/or as provided by statutory law and case law.

**VI.      MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

**A.      Plaintiff's Public Release of Claims.**  This Consent Decree is a final and binding resolution between Plaintiff, on her own behalf, and on behalf of the public and in the public interest, and CMX, and their parents, subsidiaries, affiliated entities under common ownership, directors, managers, members, divisions, affiliates, insurers, landlords, lenders, successors or assigns, officers, agents, employees, attorneys and other representatives, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any violation of the CWA, 1997 Storm Water Permit, and/or IGP that was alleged in the Complaint, Notice Letter, or that could have been brought pursuant to the Notice Letter or Complaint.  Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

1    **B.      Plaintiff's Release of Additional Claims.**  As to Plaintiff for and in her individual capacity only,

2    this Consent Decree shall have preclusive effect such that she shall not be permitted to pursue and/or take

3    any action with respect to any other statutory or common law claim, to the fullest extent that any of the

4    foregoing were or could have been asserted by her against CMX or the Releasees based on the facts alleged

5    in the Complaint and/or the Notice Letter, whether or not based on actions committed by CMX.

6    **C.      Waiver of Rights Under Section 1542 of the California Civil Code**

7          **1.**      Plaintiff acting in her individual capacity waives all rights to institute any form of legal

8    action, and releases all claims against CMX, and the Releasees, (referred to collectively in this Section as

9    the "Claims").  In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which she

10   now has, or in the future may have, conferred upon her with respect to the Claims by virtue of the provisions

11   of § 1542 of the California Civil Code, which provides as follows:

12         A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR

13         RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR

14         AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER,

15         WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE

16         DEBTOR OR RELEASED PARTY.

17         **2.**      Plaintiff understands and acknowledges that the significance and consequence of this

18   waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or

19   resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint or Notice

20   Letter, Plaintiff will not be able to make any claim for those damages against Releasees.

21   **D.      CMX's Release of Plaintiff.**  CMX, on behalf of itself, its past and current agents, representatives,

22   attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, her attorneys,

23   and other representatives for any and all actions taken or statements made (or those that could have been

24   taken or made) by Plaintiff and her attorney and other representatives, whether in the course of

25   investigating the Claims or otherwise.

26   **E.      Parties' Release.**  Unless specifically provided for in this Consent Decree, the Parties, on their

27   own behalf and on behalf of their current and former officers, directors, employees, and each of their

28   successors and assigns, and their agents, and other representatives release all persons including, without

---

1   limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and

2   subsidiary companies and affiliates and divisions, and their respective current and former officers,

3   directors, managers, members, employees, shareholders, insurers, landlords, lenders, and each of their

4   predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other

5   representatives) release each other from any additional attorneys' fees or expenses related to the resolution

6   of this matter.

7   **F.**      Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any

8   position that it deems necessary or appropriate in any formal or informal proceeding before the State

9   Board, Regional Board, EPA, or any other administrative body on any other matter relating to CMX's

10   compliance with the IGP or the Clean Water Act occurring or arising after the Effective Date of this

11   Consent Decree.

12   **VII.   <u>MISCELLANEOUS PROVISIONS</u>**

13   **A.      No Admission of Liability.**  Neither this Consent Decree, the implementation of additional or

14   modified BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a

15   finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed

16   as an admission of violation of any law, rule, or regulation.  CMX maintains and reserves all defenses it

17   may have to any alleged violations that may be raised in the future.

18   **B.      Construction.**  The language in all parts of this Consent Decree shall be construed according to

19   its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or

20   specifically herein.

21   **C.      Choice of Law and Venue.**  The laws of the United States shall govern this Consent Decree, with

22   venue proper only in the Central District of California.

23   **D.      Severability.**  In the event that any provision, paragraph, section, or sentence of this Consent

24   Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be

25   adversely affected.

26   **E.      Correspondence and Notices.**  Any and all notices and/or correspondence between the Parties

27   provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent

28   by:

1       **1.**       First-class (registered or certified) mail return receipt requested; or

2       **2.**       Overnight or two-day courier; or

3       **3.**       By email on any Party by the other Party to the following addresses:

**If to Plaintiff:**

Evan J. Smith, Esquire
Brodsky & Smith, LLC
Two Bala Plaza, Suite 805
Bala Cynwyd, PA  19004
T:  877.354.2590
Email:  esmith@brodskysmith.com

**If to CMX:**

Ruben Castellón

Castellón & Funderburk LLP

811 Wilshire Blvd. Ste. 1025

Los Angeles, CA 90017-2649

rcastellon@candffirm.com

Any change of address or addresses shall be communicated in the manner described above for giving notices.

**F.**     **Counterparts.**  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**G.**     **Modification of the Consent Decree.**  Except as otherwise provided herein, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Decree by the Court.  If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

**H.**     **Full Settlement.**  This Consent Decree contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations,

1   commitments and understandings related thereto.  No representations, oral or otherwise, express or

2   implied, other than those contained herein have been made by any party hereto.  No other agreements not

3   specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

4   **I.**      **Integration Clause.**  This is an integrated Consent Decree.  This Consent Decree is intended to

5   be a full and complete statement of the terms of the Consent Decree between the Settling Parties and

6   expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and/or

7   warranties (express or implied) concerning the subject matter of this Consent Decree.

8   **J.**      **Authority of Counsel.**  The undersigned representatives for Plaintiff and CMX each certify that

9   he/she is fully authorized by the party whom he/she represents to approve this Consent Decree as to form.

10  **K.**      **Authority.**  CMX certifies that its undersigned representative is fully authorized to enter into this

11  Consent Decree, to execute it on behalf of CMX, and to legally bind CMX to its terms.

12  **L.**      **Agreement to be Bound.**  The Settling Parties, including any successors or assigns, agree to be

13  bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement

14  or enforce its terms.

15  **VIII.   COURT APPROVAL**

16  The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree.

17  Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or

18  trial on the allegations of the Complaint and Notice Letter which are at issue in this action.  If this Consent

19  Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any

20  proceeding for any purpose.

21

22          **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date set

23  forth below.

24  **SO AGREED AND APPROVED AS TO CONTENT**

25

26

27

28

Dated: **01/05/2021**    **PLAINTIFF**

_alesha_

Alesha Davis

Dated: _____    **CALIFORNIA METAL-X (CMX)**

By:_____
   Karen Strelitz
   Executive Vice President

**APPROVED AS TO FORM**

Dated: **1 / 11 / 21**     **BRODSKY & SMITH, LLC**

By:_____
   Evan J. Smith (SBN:242352)
   Attorneys for Plaintiff

Dated: _____    **CASTELLON & FUNDERBURK LLP**

By:_____

     Ruben A. Castellón (SBN 154610)

     Attorneys for California Metal-X (CMX)

**IT IS SO ORDERED.**

Date: _____    _____
   The Honorable Dolly M. Gee
   United States District Court Judge
   Central District of California

---

Consent Decree      15      Civil Case No. 2:20-cv-07066-DMG-AFM

1

Dated: _____          **PLAINTIFF**

2

3                                   _____
                                    Alesha Davis

4   Dated: *01.05.2021*             **CALIFORNIA METAL-X (CMX)**

5                                   By: _____

6                                   Karen Strelitz
                                    Executive Vice President

7

8

9   **APPROVED AS TO FORM**

10  Dated: _____          **BRODSKY & SMITH, LLC**

11

12                                  By: _____
                                        Evan J. Smith (SBN:242352)

13                                      Attorneys for Plaintiff

14

15  Dated: 01/08/2021               **CASTELLON & FUNDERBURK LLP**

16                                  By: _____

17                                      Ruben A. Castellón (SBN 154610)

18
                                    Attorneys for California Metal-X (CMX)
19

20  **IT IS SO ORDERED.**

21  Date: March 29, 2021

22                                  _____
                                    The Honorable Dolly M. Gee
23                                  United States District Court Judge
                                    Central District of California
24

25

26

27

28

---

# Exhibit A

E. 57th Street

EMPTY SECTION

INGOT PACKING WAREHOUSE

**F**

EMPLOYEE LOCKER ROOM

NOTES:
1. Rotary Furnace
2. Rotary Furnace Heat Exchanger
3a. Rotary Furnace Baghouse #1
3b. Rotary Furnace Baghouse #2
4. Induction Furnace Baghouse
5. Wheelabrator Baghouse
6. Wheelabrator
7. Wire Chopper#1
8. Wire Chopper Cyclone
9. Metal Shredder
10. Metal Shredder and Briquetter Baghouse

11. Metal Briquetter
12. Aluminum Shredder
13. Induction Furnaces
14. Cyclone and Spark Arrestor
15. Wire Chopper#2
16. Radiator Processor
17. Magnetic Separator
18. Shell Casing Separator
19. Sierra Shredder-Shreds Shears

LEGEND

- Covered Process/Storage Area
- Open Area
- Municipal Storm Sewer Inlet
- Drainage Flow
- Roof Downspouts
- Property Line
- A-G  Subdrainage Areas
- Storm Water Flow
- Roof Rain Gutters
- Driveway Trench & Gate
- Storm Water Collection Sump & Pump
- Drain Pipe/Forcemain
- Storm Water Attenuation Tank
- Storm Water Infiltration Gallery
- Treatment flow to infiltration
- x  SP-1(Typical) storm water discharge sampling location

## Site Map/Drainage Plan

Please note: Storm Water Treatment System will be in effect March 2020.

0'    50'    100'

SAN PEDRO STREET

E 58th STREET

SP-4    SP-3    SP-2

COVERED DRIVEWAY

MAINTENANCE BUILDING
**E**

EQUIPMENT STORAGE

3b   3a   2

AIR COMPRESSORS

**D**
FOUNDRY AND PROCESS BUILDING

STORAGE BINS

Foundry - Yard Access

13   14

4    8    7    15

COVERED DRIVEWAY

EMPLOYEE LOCKER ROOM

**B**

12

16

11

10   9

**A**   STORAGE AREA   19   STORAGE AREA

OFFICE BUILDING

SCALE HOUSE

PARKING LOT

TRUCK DOCK with Cover

SHIPPING & RECEIVING

**C**

MATERIAL PROCESSING YARD

TOWN AVENUE

x SP-1

RAILROAD TRACKS

E. SLAUSON AVENUE

Note: After implementation of the treatment and infiltration systems storm water discharge will only occur at SP-3 and SP-4 if the 85th percentile storm is exceeded.

APN: 5101007003

Issue Date: 8/13/2015

Revision Date: 3/3/2020

Drawn By: Michael McEvoy

CALIFORNIA METAL-X

366 E 58th Street
Los Angeles, CA 90011



KERAMIDA
ENGINEERS • SCIENTISTS • PLANNERS
GLOBAL EHS & SUSTAINABILITY SERVICES

# Exhibit B

Exhibit A

## ASSUMPTION OF RISK, RELEASE, AND INDEMNITY AGREEMENT

I understand that I am being given temporary entry to the following property (the "Site"):

366 East 58th Street located in Los Angeles, California

In consideration of the forgoing, I agree to the following:

I acknowledge and agree that my entry onto the Site is entirely voluntary and at my own risk. Except for the intentional or grossly negligent acts or omissions of Indemnified Parties, I agree to indemnify, defend, hold harmless and release California Metal-X, its shareholders, officers, directors, employees, agents, attorneys, successors, assigns, lenders, landlords, trustees, beneficiaries, and any other person(s) related to the Site or the activity at the Site (collectively "Indemnified Parties") from any and all demands, lawsuits, damages, claims, settlements, judgments, losses, liability, or expenses (including interest, attorney fees, and expert witness fees) for personal injury, illness (including without limitation potential exposure to COVID-19), death, or property damage, caused by, arising from or related to my entry onto the Site.

I confirm that at the time of the site inspection that I do not have any communicable disease or symptoms of a communicable disease, including without limitation COVID-19 symptoms as outlined in current Centers for Disease Control guidance including: fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting, and/or diarrhea. I agree that if I have any of these symptoms at the time of the site inspection that I will not be allowed to participate in the site inspection and the site inspection will be cancelled.

I agree that I will wear personal protective equipment at the site inspection, including, but not limited to, the following: protective eye gear (goggles or glasses), face covering (covering both nose and mouth), and closed toe shoes (steel toe shoes). I also agree to maintain at least six feet social distance from all employees and representatives, including attorneys and experts.

I agree that I will not assign my rights or delegate my obligations under this Agreement and that there are no third-party beneficiaries.

I HAVE READ THIS DOCUMENT AND FULLY UNDERSTAND AND AGREE TO EACH AND EVERY PROVISION.

Signature: _Bill Hat_              Company: _Compliance Management, Inc._

Name: _Bill Habenicht_              Title: _QISP ToR_

Purpose of Visit: _Stormwater BMP Inspection_

**Exhibit B**

## Agreement of Alesha Davis' Representative

I, Bill Habenicht, am Alesha Davis' consultant, and have read, understand, and agree to comply with, and be bound by, all of the terms and conditions contained in the attached Site Visit Agreement entered into between Alesha Davis and California Metal-X (CMX).


By:     Bill Habenicht

Title: QISP ToR

Signature: _Bill H̶o̶t̶_

Date:   12/9/2020